

## NIH Consensus Statement Regarding Management of Hepatitis C (Excerpted)

The NIH "Consensus Statement on Management of Hepatitis C" was based on data available in March 1997. Because of advances in the field of antiviral therapy for chronic hepatitis C, standards of practice might change, and readers should consult with specialists knowledgeable in this area.

### Persons Recommended for Treatment

Treatment is recommended for patients with chronic hepatitis C who are at greatest risk for progression to cirrhosis, as characterized by

- persistently elevated ALT levels;
- detectable HCV RNA; and
- a liver biopsy indicating either portal or bridging fibrosis or at least moderate degrees of inflammation and necrosis.

GI consultation will be approved for inmates who meet these criteria, as long as the custody issues are met.

### Persons for Whom Treatment Is Unclear

Included are

- patients with compensated cirrhosis (without jaundice, ascites, variceal hemorrhage, or encephalopathy);
- patients with persistent ALT elevations, but with less severe histologic changes (i.e., no fibrosis and minimal necroinflammatory changes) (In these patients, progression to cirrhosis is likely to be slow, if at all; therefore, observation and serial measurements of ALT and liver biopsy every 3–5 years is an acceptable alternative to treatment with interferon); and
- patients aged <18 years or >60 years (note that interferon is not approved for patients aged <18 years).

Inmates who seem to fit into these criteria will be referred for GI consultation only if there seem to be mitigating circumstances. Please address any such issues when requesting the consultation.

### Persons for Whom Treatment Is Not Recommended

Included are

- patients with persistently normal ALT values;
- patients with advanced cirrhosis who might be at risk for decompensation with therapy;
- patients who are currently drinking excessive amounts of alcohol or who are injecting illegal drugs (treatment should be delayed until these behaviors have been discontinued for ³6 months); and
- persons with major depressive illness, cytopenias, hyperthyroidism, renal transplantation, evidence of autoimmune disease, or who are pregnant.

Except in very special circumstances, no inmate who fits into this classification will be considered eligible for interferon therapy.
GI consultation may be requested for assistance in management of the cirrhosis.

Vol. 47 / No. RR-19 MMWR 31

Exhibit - B

REGULATIONS OF CONNECTICUT STATE AGENCIES

* THIS DOCUMENT IS CURRENT THROUGH THE 4/27/99 ISSUE OF THE CONN. LAW JOURNAL

TITLE 19a PUBLIC HEALTH AND WELL-BEING
DEPARTMENT OF PUBLIC HEALTH AND ADDICTION SERVICES
REPORTABLE DISEASES AND LABORATORY FINDINGS

Regs., Conn. State Agencies @ 19a-36-A1 (1999)

Sec. 19a-36-A1. Definitions

As used in Sections 19a-36-A1 to 19a-36-A56:

(f) "Communicable disease" means a disease or condition, the infectious agent of which may pass or be carried directly or indirectly, from the body of one person or animal to the body of another person or animal.

(g) "Communicable period" means any time period during which a specific infectious agent may be transferred directly or indirectly from an infected person or animal to another human or animal.

Exhibit - C

**Sec. 19a-103. (Formerly Sec. 19-60). Control of communicable diseases in institutions.** Any person confined or imprisoned in the Connecticut Correctional Institution, Somers, or in a community correctional center or in any other institution for a period of ten days or longer may be examined for any communicable disease, and, if found infected with any such disease, he shall be treated during the term of his confinement and, if not cured at the date of his discharge, the local director of health shall be notified. The person in charge of each such institution shall provide for such examination and necessary treatment of all such persons admitted thereto. The Department of Public Health may make such regulations or orders as, in its judgment, are necessary to carry out the provisions of this section.

(1949 Rev., S. 3804; 1969, P.A. 297; P.A. 77-614, S. 323, 610; P.A. 93-381, S. 9, 39; P.A. 95-257, S. 12, 21, 58.)

History: 1969 act replaced jails with community correctional centers; P.A. 77-614 replaced department of health with department of health services, effective January 1, 1979; Sec. 19-60 transferred to Sec. 19a-103 in 1983; P.A. 93-381 replaced department of health services with department of public health and addiction services, effective July 1, 1993; P.A. 95-257 replaced Commissioner and Department of Public Health and Addiction Services with Commissioner and Department of Public Health, effective July 1, 1995.

See Sec. 18-94 re retention of diseased inmates in correctional or charitable institutions.

EXHIBIT D

4. Notice.

A. The Inmate Grievance Procedure shall be published in English and Spanish. Each inmate, direct contact employee and direct contact contractor shall be issued a written summary of the Inmate Grievance Procedure upon initial contact with the Department. An inmate whose primary language is Spanish shall receive a copy written in Spanish. Appropriate provision shall be made for those who do not read, speak or understand English and Spanish. Inmates who are impaired or disabled shall receive assistance as necessary.

B. English and Spanish copies of the Inmate Grievance Procedure shall be available in each inmate library and shall be provided to an inmate upon request.

C. An inmate shall receive oral instruction about the Inmate Grievance Procedure, filing of a grievance and obtaining grievance forms. This instruction shall encourage questions and take place as part of the orientation curriculum, not later than two (2) weeks after admission.

D. Staff shall receive oral instruction regarding the Inmate Grievance Procedure during orientation training and upon assignment to a new unit.

E. Upon transfer, an inmate shall be informed of the Inmate Grievance Procedure at the receiving unit.

5. Access. Each inmate in the Department's custody shall have access to the Inmate Grievance Procedure. Special provisions shall be made to ensure access for the impaired or disabled, illiterate or those with language barriers.

A. Any inmate who needs assistance in using the Inmate Grievance Procedure shall receive assistance upon request.

B. Access shall only be limited as a result of abuse of the Inmate Grievance Procedure in accordance with Section 19 below or failure to comply with the process.

6. Grievable Matters.

A. Grievable. The following matters are grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division and Department.
2. The existence or substance of policies, rules and procedures of the unit, division and Department in accordance with Section 13 below.
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein.
6. Property loss or damage.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE OF |
|---|---|---|
| 9.6 | January 29, 2002 | 3 8 |

TITLE

Inmate Grievances

EXHIBIT D

B. Non-Grievable. The following matters are not grievable:

1. State and federal laws and regulations.
2. State and federal court decisions.
3. Actions pursuant to the Code of Penal Discipline, which are appealable through the disciplinary procedure provided in Administrative Directive 9.5., Code of Penal Discipline.
4. Classification decisions, which are appealable through the classification procedure provided in Administrative Directive 9.2, Inmate Classification.
5. The individual designation of an inmate as a Security Risk Group Member or a Security Risk Group Safety Threat Member in accordance with Administrative Directive 6.14, Security Risk Groups.
6. Health Services diagnosis or treatment.
7. Matters beyond the control of the Department, including parole decisions.

7. Disposition and Remedy. A grievance shall either be rejected, withdrawn, denied, resolved by compromise, or upheld. Grievances that are upheld shall be given an appropriate and meaningful remedy. Such remedies may include, but not be limited to:

A. Corrective action to rectify the matter being grieved.
B. Changes in written policy and procedures or in interpretation or application of written policies and procedures.
C. Enforcement of existing policy and procedure.
D. Development of policies and procedures pertaining to the grievance.

8. Administrative Provisions. Each Unit Administrator shall establish unit directives consistent with the Inmate Grievance Procedure and the type of unit, which shall include at a minimum:

A. The designation of a staff person, to be known as the Grievance Coordinator, whose scope of authority and responsibility shall be defined by the Unit Administrator.
B. Notification procedures to inmates of the name of the Grievance Coordinator.
C. Provision for adequate numbers of collection boxes at various unit locations for the deposit of grievances. Units shall provide locked boxes for depositing grievances.
D. Procedures for the regular and timely collection and appropriate logging of grievances.
E. Procedures for the prompt handling of all emergency grievances.
F. Procedures to assure that no employee or inmate shall participate in the resolution of a grievance in which the employee or inmate is allegedly involved.
G. Procedures to provide notice of and access to the Inmate Grievance Procedure for all inmates including the impaired, disabled, illiterate and those with language barriers.

9. Informal Resolution. An inmate shall attempt to seek informal resolution, in writing, through the use of the Inmate Request Form CN 9602, prior to filing an inmate grievance. A clear statement of the problem and action requested should be written by the inmate and sent to the appropriate unit Department Head or employee. Inmate Request Forms shall be available in all units. Response to the inmate shall be made within 15 calendar days from receipt of the request. The Unit Administrator shall post in each housing unit a list of staff members to whom Inmate Requests should be addressed for each of the grievable subjects.

10. Filing a Grievance. An inmate may file a grievance if Informal Resolution has not resolved the problem. The inmate shall attach the Inmate Request Form CN 9602, containing the appropriate staff member's response, to the Inmate Grievance Form which requirement may be waived for an emergency grievance. If the inmate was unable to obtain a blank Inmate Request Form, did not receive a timely response to the Inmate Request, or for a similar valid reason, the inmate shall include an explanation as to why the Inmate Request Form is not attached. A grievance shall be filed in accordance with the following provisions:

A. A grievance must be filed, in writing, on the Inmate Grievance Form CN 9601A or CN 9601B. Grievance forms shall be readily accessible to inmates.

B. Each grievable matter shall be submitted on a separate Inmate Grievance Form.

C. The grievance and the action requested should be stated simply and coherently.

D. The length of the grievance shall be restricted to the space available on the face of the grievance form and one (1) additional 8 1/2 x 11 inch page.

E. The grievance shall be free of obscene or vulgar language or content.

F. The grievance must be filed by an inmate who is personally affected by the grievance subject and shall not be filed by one (1) inmate on behalf of another.

G. The grievance must be filed within 30 days of the occurrence or discovery of the cause of the grievance, except for grievances regarding property, which must be filed within one (1) year of the discovery or within three (3) years of the occurrence.

H. A repetitive grievance may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial grievance is still in process.

A grievance may be returned without disposition to the inmate for failure to attempt Informal Resolution, or to adequately explain why a response to the Inmate Request Form is not attached, or for failure to comply with the provisions of subsections A through E above. "Returned without disposition" means that the grievance has not been properly filed; it may be re-filed when the error is remedied.